# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Vermont Unit | Docket No. 43-4-13 Vtec |

## Champlain Farms Site Plan Application

## ENTRY REGARDING MOTION

Title:            Motion for Summary Judgment (Motion 4)

Filer:            City of South Burlington

Attorney:       Amanda Lafferty

Filed Date:     July 1, 2014

Response in Opposition filed on 09/02/2014 by Robert F. O'Neill, Attorney for Appellant Timberlake Associates, LLP

Reply filed on 09/16/2014 by Amanda Lafferty, Attorney for the City of South Burlington

**The motion is GRANTED IN PART and DENIED IN PART.**

Timberlake Associates, LLP ("Applicant") seeks to improve and expand its existing commercial facility at 801 Williston Road in the City of South Burlington ("City"). Applicant's current commercial facility, operated under the business name "Champlain Farms," consists of a 900 square foot convenience store and gasoline station. Applicant seeks to expand or replace its existing convenience store facility with a 2,242 square foot facility with nearly 1,600 square feet devoted to a new commercial use: a short-order restaurant with seating for sixteen. The remainder of the new facility will be devoted to a continuation of the convenience store use. Applicant also proposes certain site modifications. We are uncertain from the factual representations presented whether Applicant intends to expand the number of fueling stations, although that fact is not material to the pending motion.

The City has moved for summary judgment on a somewhat narrow issue related to traffic impacts. For the reasons stated below, we conclude that while the undisputed material facts and applicable law result in some of the legal determinations that the City requests, not all material facts as presented are sufficiently clear. We therefore conclude that some of the City's summary judgment requests must be denied and must therefore proceed to trial.

The pending motion directs our attention to Section 10.02 of the City of South Burlington Land Development Regulations ("Regulations"). That Section sets out the governing provisions that the City established for its Traffic Overlay District. The parties appear to agree that Applicant's property is located in Zone 1 of the Traffic Overlay District. The purpose of the

City's Traffic Overlay District helps provide context for our analysis; it provides that the District's purpose is

> to provide a performance-based approach to traffic and access management associated with development and re-development of properties in high traffic areas of the City.  It is the further purpose of the Traffic Overlay District to provide a means by which the allowable uses and the arrangement and intensity of uses on a given parcel may be regulated, above and beyond District regulations, based on traffic generated and impacts on City access management goals.  It is the further purpose of the Traffic Overlay District to provide incentives to improve site design and access management during the development and redevelopment process, in keeping with the goals and objectives of the City's Comprehensive Plan.

The parties also appear to agree that, absent any applicable exception, the proposed project is estimated to generate traffic that exceeds the allowable maximums, as established by the applicable Overlay District calculation for Zone 1.  See Regulations § 10.02(F) and Table 10-1.  There are, however, applicable exceptions to that general calculation rules.

Regulations § 10.02(H) provides for "adjustments to a project's traffic generation calculation," based upon "the existing peak hour trip generation" for an existing development on the project site.  The provision applicable to Applicant's existing commercial development and proposed improvements provides that:

> In the event that the existing peak hour trip generation of the uses presently authorized and operating on the site exceeds the maximum allowable traffic budget for the site including credits, the existing peak hour trip generation shall be the maximum allowable for the site, and no additional credits shall be provided for site improvements or any other cause.  This provision shall not alleviate the responsibility of the applicant to make traffic and other site improvements required by the DRB pursuant to these Regulations as part of a site plan, PUD or conditional use approval.

Regulations § 10.02(H)(2).

The parties dispute the import of these provisions, but not the facts material to our legal analysis.  The City asserts, and Applicant does not dispute, that without an adjustment being applied, § 10.02(F) would limit Applicant's proposed development to one that would generate no more than just under 30 peak hour vehicle trip ends ("VTEs").

Applicant concedes that its own traffic expert estimates that its proposed development will generate an estimated 78 peak hour VTEs.  However, Applicant asserts that since its existing development was approved for a maximum traffic generation of 79 VTEs, its proposed improvements are allowed under § 10.02(H)(2).  We do not agree with Applicant's interpretation because of the plain language of the Regulations.

The purpose provisions for the Traffic Overlay District make clear that the City seeks to alleviate the impacts of heavy traffic generated by intense development in this District, while

allowing for the continuation of existing uses and the traffic generated by those uses. We therefore conclude that § 10.02(H)(2) allows for improvements to properties, so long as the improved developments do not generate more estimated peak hour traffic than the traffic that is actually generated by the "existing peak hour trip generation" from the existing development. Id. Stated differently, we do not interpret § 10.02(H)(2) to allow for reference to the peak level of traffic allowed when project was first permitted; it allows for a developer to make improvements to an existing development, even if those improvements may generate more traffic than is allowed under Regulations § 10.02(F), but only so long as the new development will not generate more traffic than the existing development actually generates. We therefore conclude that whatever the existing development may have been approved for, based upon traffic estimates of twelve or more years ago, the only figure relevant to an adjustment under Regulations § 10.02(H)(2) is the traffic that the existing project now generates. These material facts are either not provided with sufficient clarity or are disputed.

We also re-direct the parties to the last half of Subsection (H)(2), which provides first that "no additional credits shall be provided for site improvements or any other cause" when an adjustment based upon the traffic generated by an existing development is employed. Second, even where an adjustment above the normal maximum traffic level directed by Regulation § 10.02(F) is allowed, that allowance "shall not alleviate . . . the applicant to make traffic and other site improvements required by the DRB . . . as part of a site plan, PUD or conditional use approval." Regulations § 10.02(H)(2). Thus, Applicant's proposed development may not seek additional traffic credits and will consider whether Applicant must include traffic or other site improvements as part of the site plan, PUD, or conditional use review.

This matter is presently set for trial to commence on **Tuesday, February 10, 2015**. The Court regrets its delay in responding to the pending motion, but believes that this Entry Order provides the parties with sufficient time to complete their trial preparations. Therefore, the Court directs that this matter proceed to trial as scheduled.

Electronically signed on January 08, 2015 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

Notifications:
Robert F. O'Neill (ERN 2991), Attorney for Appellant Timberlake Associates, LLP
Gerald R. Tarrant (ERN 3786), Attorney for Interested Person R.L. Vallee, Inc., d/b/a Maplefields
Amanda Lafferty (ERN 5113), Attorney for Interested Person City of South Burlington
Matthew S. Stern (ERN 5743), Co-Counsel for party #2.